UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

AMIT V. PATEL,                                          :
                                                       :
                                    Plaintiff,         :        **REPORT AND RECOMMENDATION**
                                                       :
               -v-                                     :        22-CV-10964 (GHW) (RFT)
                                                       :
CLANE GESSEL STUDIO and CLANE GESSEL,                  :
                                                       :
                                    Defendants.        :
-------------------------------------------------------------------X

**ROBYN F. TARNOFSKY, United States Magistrate Judge.**

TO THE HONORABLE GREGORY H. WOODS, UNITED STATES DISTRICT JUDGE:

On December 29, 2022, Plaintiff Amit V. Patel filed a complaint alleging breach of contract and unjust enrichment against Defendants Clane Gessel and Clane Gessel Studio ("CGS"). (*See* ECF 1, Compl.) Pending before this Court is a motion to dismiss the complaint pursuant to Rules 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure and pursuant to the Federal Arbitration Act, or, in the alternative, to transfer venue. Defendants also ask the Court to compel arbitration. (ECF 25, Mot. To Dismiss at 1.) I have reviewed the parties' filings on the docket. For the reasons set forth below and as specified herein, I respectfully recommend that the motion to dismiss the complaint for insufficient service of process be DENIED as moot; that the motion to dismiss the complaint for lack of personal jurisdiction be DENIED; that the motion to dismiss for improper venue be DENIED; that the motion to transfer venue be DENIED; that the motion to dismiss in favor of arbitration be DENIED; and that the motion to compel arbitration be GRANTED. I further recommend that

the motion to dismiss pursuant to Rule 12(b)(6) be DENIED without prejudice to Defendants' renewing it before the arbitrator.

## FACTUAL BACKGROUND

For purposes of the pending motions, the Court accepts Plaintiff's allegations as true and draws all reasonable inferences in his favor. *See City of Providence v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 50 (2d Cir. 2017).

Plaintiff and Defendant CGS entered into a contract for CGS to provide photography and videography services at the wedding of Plaintiff's daughter in Turkey (the "Contract"). (ECF 1, Compl. ¶ 7.) The Contract provided that Gessel would be the main photographer at all wedding-related events; that the couple would receive 40 same-day edits on the day of the wedding; that all raw photographs would be provided to the couple before Gessel left Turkey; and that a complete set of edited images would be delivered to an online gallery within two weeks of the wedding. (*See id.* Ex. A.)[1] The Contract also provided that Gessel and two of his employees would photograph the Plaintiff's daughter's engagement party in New York City, for a fee of $9500, with that amount being applied to the cost of the wedding photography and videography. (*See id.*) The Contract had a Washington State choice of law provision and an arbitration clause. (*See id.*) It also provided for payments to Defendants to be sent to Seattle, Washington. (*See id.*)

---

[1]    The Court may consider the Contract in connection with this motion to dismiss because it is attached to the Complaint as an exhibit. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

Plaintiff paid the full fee of over $75,000 in advance a month before the wedding, as required by the Contract. (*See id.* ¶ 9.) A few days before the wedding, Gessel emailed Plaintiff saying that Gessel would decide which photographers would cover each wedding-related event, in violation of the provision that Gessel would be the main photographer at each event; Gessel also insisted that his team stay at the same hotel as the wedding guests, rather than at a nearby hotel, as Plaintiff had arranged. (*See id.* ¶¶ 10-11.) Gessel said he would not fly to Turkey unless Plaintiff confirmed his agreement to these two stipulations. (*See id.* ¶ 12.) Plaintiff refused, and CGS did not provide photography or videography services for the wedding. (*See id.* ¶ 14.) Plaintiff was obligated to hire a replacement photographer and videographer. (*See id.*)

## PROCEDURAL HISTORY

On December 29, 2022, Plaintiff filed his complaint for breach of contract and unjust enrichment against Defendants Gessel and CGS**.** (*See generally* ECF 1, Compl.) On May 26, 2023, Defendants moved to dismiss the complaint pursuant to Rules 12(b)(2) (lack of personal jurisdiction), 12(b)(3) (improper venue), 12(b)(5) (insufficient service of process) and 12(b)(6) (failure to state a claim on which relief can be granted) as well as pursuant to the Federal Arbitration Act in favor of arbitration; Defendants requested in the alternative a transfer of venue to the Western District of Washington, and they also asked the Court to compel arbitration. (*See* ECF 25-17, Defs.' Mem. in Support of Mot. To Dismiss.) The motion is fully briefed. (*See* ECF 29, Pl.'s Opp., ECF 30, Defs.' Reply.)

This matter has been referred to me for certain purposes, including general pretrial supervision, settlement, and dispositive motions. (*See* 11/15/23 Not. of Reassignment.) On

3

November 30, 2023, I issued an order setting a schedule for jurisdictional discovery, if Plaintiff wished to take such discovery, and for supplemental briefing on the issues of personal jurisdiction and venue, if the parties wished to make such filings. (*See* ECF 46, Order.) On December 29, 2023, Plaintiff submitted a supplemental letter in opposition to the motion to dismiss after taking Gessel's deposition on jurisdictional matters. (*See* ECF 55, Letter.)

In that same order of November 30, 2023, I granted an extension of time for Plaintiff to effect service, until January 2, 2024. (*See* ECF 46, Order at 7.) On December 1, 2023, I issued an order scheduling a settlement conference, which was rescheduled to be held on January 24, 2024. (ECF 47, Order; ECF 49, Order.)

Plaintiff filed an affidavit of service on January 2, 2024. (*See* ECF 56.) On January 5, 2024, Defendants filed a "supplemental motion to dismiss for lack of jurisdiction," pointing out that the affidavits of service for each Defendant stated that Clane Gessel, the person identified as having accepted the papers, was female, when in fact Gessel is male. (*See* ECF 57, Defs.' Supp. Mot. ¶ 40.) On January 9, 2024, Plaintiff moved to be permitted to use alternative service on Defendants (*see* ECF 58, Letter), which motion I denied without prejudice to Plaintiff's refiling after providing a more detailed affidavit of service. (*See* ECF 59, Order.)

On January 15, 2024, the parties filed a notice stating that they had reached a settlement in principle. (*See* ECF 60, Notice.) Your Honor issued a thirty-day order on January 16, 2024. (*See* ECF 61, Order.) On February 13, 2024, Your Honor granted the parties' request (ECF 62) for additional time to finalize their settlement until March 5, 2024. (*See* ECF 63, Order.) On March 4, 2024, Plaintiff wrote the Court to indicate that the parties were unable to finalize

their settlement and wished the case to be reopened; that a settlement conference at this time would not be productive; and that Defendants' motion to dismiss was ripe for adjudication. (*See* ECF 64, Letter.) Your Honor directed the Clerk of Court to restore the case to the active docket. (*See* ECF 66, Order.) The process server filed an updated affidavit of service, setting out what had happened when he attempted to serve defendants. (*See* ECF 65, Affidavit of Service.) Based on that affidavit, I concluded that Plaintiff had not effectively served Defendants by the January 2, 2024 deadline and issued an Order To Show Cause why the case should not be dismissed for failure to serve. (*See* ECF 68, Order To Show Cause.)

Plaintiff responded to the Order To Show Cause with a new affidavit of service, reflecting service on Defendants by April 3, 2024, along with a request for an extension of time nunc pro tunc until that date. (*See* ECF 70, ECF 71, ECF 72.) Defendants opposed Plaintiff's request for a nunc pro tunc extension of time. (*See* ECF 73, Response to Order To Show Cause.) I held a conference on April 10, 2024, and I granted the requested extension of time for the reasons set forth on the record. (*See* ECF 75, Minute Entry; ECF 76, Order.)[2]

---

[2]     Because I granted the requested extension of time to serve, nunc pro tunc, I conclude that Plaintiff successfully effected service after Defendants moved to dismiss. It is typical to deny a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service under those circumstances, *Gigliotti v. Allied Educ. Council*, No. 75-CV-1393 (JMC), 1975 WL 21407, at *1 (S.D.N.Y. May 2, 1975) ("it appears that defendant's claim under Rule 12 (b)(5) has been rendered moot by virtue of further service of process upon the defendant during the pendency of this motion"), and so I respectfully recommend that the Court deny the motion to dismiss for insufficient service and will not address that issue further.

## DISCUSSION

### I.    Service, Personal Jurisdiction, and Venue

#### A.    Legal Standards

Defendants ask the Court to dismiss the complaint pursuant to Rule 12(b)(2) for lack of

personal jurisdiction and pursuant to Rule 12(b)(3) for improper venue. (*See* ECF 25-17, Defs.'

Mem. in Support of Mot. To Dismiss.) Courts apply the same standard of review for dismissals

under both Rules. *See Fedele v. Harris*, 18 F. Supp. 3d 309, 316 (E.D.N.Y. 2014). The "burden of

proof lies with the plaintiff . . . ." *Spiciarich v. Mexican Radio Corp.*, No. 14-CV-9009 (SHS), 2015

WL 4191532, at *2 (S.D.N.Y. July 10, 2015). "The court must draw all reasonable inferences and

resolve all factual conflicts in favor of the plaintiff." *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*,

307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (quoting *E.P.A. ex rel. McKeown v. Port Auth.*, 162 F.

Supp. 2d 173, 183 (S.D.N.Y. 2001) (internal quotation marks omitted)). The Court "may examine

facts outside the complaint to determine whether venue is proper." *Id.* The same is true for

evaluating whether the Court has personal jurisdiction over the defendants. *See Big Apple*

*Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.*, No. 05-CV-9994 (KMW), 2007 WL 747807,

at *1 (S.D.N.Y. Mar. 9, 2007).

If the court chooses to rely on pleadings and affidavits, the plaintiff need only make

a prima facie showing, and the papers are read in the light most favorable to the plaintiff. *See*

*CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364-65 (2d Cir. 1986). However, courts have

granted Rule 12(b)(2) motions both when the plaintiff had no factual basis for an important

jurisdictional allegation and when the plaintiff's allegations were affirmatively disproved. *See,*

*e.g., Stewart v. Vista Point Verlag*, No. 99-CV-4225 (LAP), 2000 WL 1459839, at *3-4 (S.D.N.Y. Sept. 29, 2000), aff'd, 20 F. App'x 91 (2d Cir. 2001).

      B.      <u>This Court Has Personal Jurisdiction Over Defendants</u>

      1.   Legal Framework for Analyzing Personal Jurisdiction

"In assessing whether personal jurisdiction is authorized, 'the court must first look to the long-arm statute of the forum state, in this instance New York.'" *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quoting *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)). "In New York, general jurisdiction is governed by N.Y. CPLR § 301. Section 301 preserves the common law notion that 'a court may exercise general jurisdiction over a nondomiciliary defendant if the defendant is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction.'" *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798-99 (S.D.N.Y. 2015) (quoting *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 103 (S.D.N.Y. 2015)).

A corporate defendant is subject to general jurisdiction only where it is incorporated and where it has its principal place of business, or, in the "exceptional case," where the foreign defendant's contacts with the forum are "so substantial and of such a nature as to render the corporation at home in" the forum. *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015), aff'd, 882 F.3d 333 (2d Cir. 2018) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)).

To determine whether it has specific jurisdiction under N.Y. CPLR § 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 850 N.E.2d 1140, 1142 (N.Y. 2006)). Under the first prong, the defendant must have transacted business "in such a way that it constitutes purposeful activity," meaning "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate . . . ." *Id.* at 246-47 (internal quotation marks omitted). Under the second prong, "a claim aris[es] from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." *Id.* at 249 (internal quotation marks omitted).

### 2. Facts Relevant to Personal Jurisdiction Over Defendants

Plaintiff states that Gessel's last known address, based on "skip tracing," or the process of collecting information on a hard-to-locate individual, is in Brooklyn, New York. (*See* ECF 28, 6/26/23 Declaration of Joel G. Macmull ("Macmull Decl.") ¶ 12.) The contact link on the CGS website provides a telephone number with a (212) area code and lists New York, NY as CGS's location. (*See id.* ¶ 5.) The Google Review page for CGS provides a Manhattan address. (*See id.* ¶ 4.) Gessel's Instagram page states that he is a photographer who works "New York/Worldwide." (*See id.* ¶ 6.) He testified at deposition that he had not updated his Instagram in "a long time." (*See* ECF 55-1, Gessel Dep. Transcript at 49:12-25.) His personal Facebook page

states that he "[l]ives in New York, New York." (*See id.* ¶ 7.) He testified at his deposition that he had not updated his Facebook page in "years."  (*See* ECF 55-1, Gessel Dep. Transcript at 50:16-21.) He said that a post from June of 2023 on his Facebook page stating that his favorite spot to photograph was "home in Manhattan" had not been written by him and might have been written by someone who used to run his Instagram account. (*See id.* at 51:22-52:18.)

Plaintiff's daughter learned of CGS from her New York-based wedding planner, who received fees from vendors whose services she recommended, including from CGS. (*See* ECF 26, 6/26/23 Declaration of Amit Patel ("Amit Patel Decl.") ¶¶ 3-4.) Plaintiff argues that the wedding planner was Defendants' agent, and that she solicited business on his behalf from a permanent location within New York State. (*See* ECF 29, Pl.'s Opp. at 14.)

Gessel met with Plaintiff's daughter on July 1, 2021, to discuss the possibility of CGS providing photography and videography services at her wedding. (*See* ECF 27, 6/26/23 Declaration of Anisha Patel ("Anisha Patel Decl.") ¶ 4.) Later that year, after the parties entered into the Contract, he photographed the engagement party of Plaintiff's daughter; at that party, he, Plaintiff and the bride discussed his work at the upcoming wedding. (*See id.* ¶ 8.) Gessel performed photography services for other couples in New York City. (*See id*. ¶ 5.) Both before and after the parties entered into the Contract, Gessel and the bride exchanged email and text messages and had phone calls and virtual meetings while the bride was in New York City; she asserts that he was aware of her location during those communications. (*See id.* ¶ 7.)

When Plaintiff tried to serve Defendants at the Manhattan address listed on CGS's Google Review page, the receptionist there had no idea who Defendants were. (*See* ECF 28,

Macmull Decl. ¶ 9.) Gessel submitted an affidavit stating that he does not currently live in New York State, that CGS does not currently have an office in New York City, and that CGS is incorporated in Washington State and has its principal place of business in Seattle. (*See* ECF 25-16. 5/25/23 Affidavit of Clane Gessel ("Gessel Aff.") ¶ 22.) At his deposition, Gessel stated that he no longer lives in New York City or Seattle but has a house in Phoenix, Arizona. (*See* ECF 55-1, Gessel Dep. Transcript at 18:17-24, 42:13-25.) He testified that the Brooklyn address where Plaintiff had tried to serve him was his girlfriend's old apartment and that he had never lived there. (*See id.* 44:16-46:5.)

3.   Analysis

Plaintiff has not established that Defendants are subject to the general jurisdiction of this Court. Based on Gessel's affidavit and deposition testimony, Plaintiff has not shown that Gessel lived in New York at the time the case was filed. Plaintiff has not demonstrated that CGS is incorporated or has its principal place of business in New York. And Plaintiff has not made a prima facie showing that this is the "exceptional case," where the foreign defendants' contacts with the District are "so substantial" as to cause them to be "'at home' in" the forum. *SPV OSUS Ltd.*, 114 F. Supp. 3d at 168 (quoting *Daimler AG*, 571 U.S. at 139 n.19).

It is true that CSG and Gessel held themselves out as having contacts to New York, by, among other things, listing a phone number with a (212) area code on the CGS website, which also stated that the photography studio had a location in New York. (*See* ECF 28, Macmull Decl. ¶ 5.) Defendants met with Plaintiff in New York City on two occasions and had multiple communications with the bride while she was in New York City. (See ECF 27, Anisha Patel Decl.

¶¶ 5, 7.) And Defendants performed photography services for an unspecified number of other clients in New York City. (*See id.* ¶ 5.) But these contacts are not so substantial as to cause Defendants to be at home in this District. *See DeLorenzo v. Ricketts & Assocs., Ltd.*, No. 15-CV-2506 (VSB), 2017 WL 4277177, at *8 (S.D.N.Y. Sept. 25, 2017) (holding that the defendant's website, accessible to the general public in order to solicit business in New York, was insufficient to establish general jurisdiction without additional indicia of presence in the state, such as, maintaining an office, bank accounts, property, employees, and agents), *aff'd sub nom. DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6 (2d Cir. 2018)*; MMA Fighter Mgmt., Inc. v. Ballengee Grp., LLC*, No. 19-CV-11276 (AKH), 2020 WL 3000401, at *2 (S.D.N.Y. June 4, 2020) (holding that the defendant's contacts with state were insufficient to establish general jurisdiction where the defendant had several New York clients whom it regularly visited and the defendant solicited business by attending numerous New York events); *see also id.* at *3 (court lacked general jurisdiction over the individual defendant where alleged New York activity was conducted on behalf of corporate defendant) (citing *San Diego Cty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 117 (S.D.N.Y. 2010)).

Nor can Plaintiff make a prima facie showing of general jurisdiction based on his assertion that the wedding planner was Defendants' agent, who solicited business on Defendants' behalf in New York City (*see* ECF 29, Pl.'s Opp. at 14). Plaintiff's only factual allegation in support of this position is that the wedding planner received a fee for referring Defendants (and other vendors) to Plaintiff's daughter. (*See* ECF 26. Amit Patel Decl. ¶ 4.) Establishing agency in the jurisdictional context, however, requires Plaintiff to make a showing

that the agent is "primarily employed by the defendant and not engaged in similar services for other clients," *Lebron v. Encarnacion*, 253 F. Supp. 3d 513, 520 (E.D.N.Y. 2017). Even drawing all reasonable inferences in Plaintiff's favor, this factual showing is insufficient to support his conclusion that the wedding planner was Defendants' agent.

I conclude that this Court does, however, have specific jurisdiction over Defendants. Defendants purposefully conducted business in New York, by entering into the Contract, which provided for photographing both Plaintiff's daughter's engagement party in New York City and her wedding in Turkey. (*See* ECF 1, Compl. Ex. A.) And there is an "articulable nexus between the business transacted" – here, the Contract to provide wedding photography and videography services, and "the cause of action sued upon" – here, the breach of that contract. *See Best Van Lines*, 490 F.3d at 249.

I therefore recommend denying Defendants' motion to dismiss pursuant to Rule 12(b)(2).

### C.    Venue Lies in this District Under 28 U.S.C. § 1391(b)(3)

Venue lies:

> in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).[3]

---

[3]    "In 2011, Congress amended Section 1391 to remove the distinction formerly made between actions brought on the basis on federal question jurisdiction and those brought on the

Venue is not proper in this District under section 1391(b)(1), because Plaintiff has not established that any Defendant resides in here. *See supra* Part I(B). I therefore look at whether venue lies here under sections 1391(b)(2) or (b)(3).

1. Analysis Under 1391(b)(2)

Plaintiff argues that venue in this District is proper under section 1391(b) (*see* ECF 1, Compl. ¶ 6), which provides that venue lies where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). In determining venue under this section, a court must apply a substantial contacts test. *See Zitman v. Tucker*, No. 94-CV-6658 (WK), 1994 WL 713693, at *1 (S.D.N.Y. Dec. 21, 1994); *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, No. 92-CV-9002 (KMW), 1994 WL 74860, at *3 (S.D.N.Y. Mar. 7, 1994). Venue is proper in each district that is the location of a substantial part of the events or omissions giving rise to the claim, *see PI, Inc. v. Quality Prod., Inc.*, 907 F. Supp. 752, 757 (S.D.N.Y. 1995), and so venue may be proper in more than one jurisdiction, *see Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992). "The venue statute . . . requires *more* to establish proper venue than the minimum contacts sufficient to establish personal jurisdiction."

---

basis of diversity jurisdiction . . . . Section 1391(b) applies regardless of the basis of the Court's subject matter jurisdiction." *Rankel v. Kabateck*, No. 12-CV-0216 (VB), 2013 WL 7161687, at *3 n.6 (S.D.N.Y. Dec. 9, 2013). However, the parallel provisions of the earlier version of section 1391(a) are identical to the provisions of section 1391(b), and so the case law interpreting the earlier version of section 1301(a) is applicable to analysis under section 1391(b). *See Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 356 n.1 (2d Cir. 2005) (concluding that "while diversity jurisdiction is generally analyzed by a separate provision of 1391, the analysis under "the non-diversity provision" was "identical" for the Court's purposes). I therefore cite to case law interpreting provisions of the old version of section 1391(a) in this Report and Recommendation.

*Altman v. Giblin*, No. 09-CV-7194 (LTS) (RLE), 2010 WL 11655374, at *2 (S.D.N.Y. Mar. 30, 2010)

(emphasis added) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir.2005)).

Whether contacts are substantial "for venue purposes is more a qualitative than a

quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the

nature of the specific events or omissions in the forum, and not by simply adding up the

number of contacts." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005).

The Second Circuit has cautioned that "the adjective 'substantial'" should be taken seriously,

and therefore, "for venue to be proper, *significant* events or omissions *material* to the

plaintiff's claim must have occurred in the district in question." *Gulf Ins.*, 417 F.3d at

357 (emphasis in original). The Second Circuit has also "made clear that when a court examines

the question of whether venue in a forum is proper, it must focus on where

the *defendant's* acts or omissions occurred." *Prospect Capital Corp. v. Bender*, No. 09-CV-826,

2009 WL 4907121 (HB), at *3 (S.D.N.Y. Dec. 21, 2009) (emphasis in original) (citing *Daniel*, 428

F.3d at 434).

In determining whether venue is proper for a breach of contract action under section

1391(b)(2), courts consider several factors, including where the contract was negotiated or

executed, where it was to be performed, and where the alleged breach took place. *See*

*Jordache*, 1994 WL 74860, at *4; *JSP Int'l v. Tri–Tech Group, Inc.*, No. 95-2422 (RPP), 1995 WL

413299, at *5 (S.D.N.Y. July 13, 1995).

The Complaint alleges that a "substantial part of the events giving rise to Plaintiff's

claims, including the Defendants' conduct occurred in [this judicial] district." (ECF 1, Compl. ¶

14

6.) However, Plaintiff fails to provide factual support for this assertion. He does point to several contacts with this District, but those contacts are not type that courts generally consider when determining where venue lies in a breach of contract case and therefore are insufficient to support a prima facie case that venue is proper in this jurisdiction: he does not demonstrate that this District was the location of the contract negotiations or signing, where performance was to take place, or where the breach occurred, *see Jordache,* 1994 WL 74860, at *4.

Instead, Plaintiff points out that his daughter learned of Defendants through her New York City-based wedding planner (*see* ECF 27, Anisha Patel Decl. ¶ 3), who received a fee from Gessel for making the referral (*see* ECF 26, Amit Patel Decl. ¶ 4), and he points to one preliminary meeting in the District, when his daughter met Gessel in New York City on July 1, 2021, to discuss retaining him as her wedding photographer (*see* ECF 27, Anisha Patel Decl. ¶ 4). But initial talks in a district are insufficient to confer venue when those talks lead to a contract that is finalized or executed outside that district. *See, e.g., PI,* 907 F. Supp. at 758 (holding that venue did not lie in a district where the parties had initial conversations about a deal when the contract was neither finalized nor executed there).

Plaintiff also points out that, during his daughter's engagement party in New York City, which Gessel photographed, Plaintiff, his daughter, and Gessel discussed her "upcoming wedding and the scope of Gessel's services to performed at [her] wedding." (*See* ECF 27, Anisha Patel Decl. ¶ 8.) And he notes that, both before and after the engagement party, the bride and Gessel exchanged email communications and phone calls and held numerous virtual meetings;

during those exchanges, she was in New York City, and she states that Gessel was aware of her location. (*See id.* ¶ 7.)

However, as this Court has explained, "the proper inquiry is whether a substantial portion of the acts or omissions *giving rise to the claim* took place in the Southern District of New York." *Jordache*, 1994 WL 74860, at *4 (emphasis in original) (holding that venue was improper where the defendants' meetings with plaintiffs in the district did not "represent a significant portion of the events giving rise to plaintiffs' malpractice claim"); *see also Pfeiffer v. Insty Prints*, No. 93-CV-2937 (WTH), 1993 WL 443403, at *3 (N.D. Ill. Oct, 29, 1993) (holding that venue was improper in a breach of contract case when the conduct alleged by the plaintiff in the proposed forum was not the conduct underlying the breach); *Tifa Ltd. v. Republic of Ghana,* 692 F. Supp. 393, 406 (D.N.J. 1988) (ruling that venue was improper under the Foreign Sovereign Immunities Act "substantial portion" test, since most of the events that occurred in the jurisdiction did not give rise to the claim). Plaintiff does not connect the conversations with Gessel, which took place after the Contract was executed, with the alleged breach. *See Jordache*, 1994 WL 74860, at *5 ("Meetings and communications designed to inform plaintiffs about defendants' performance of contractual obligations must be distinguished from the performance itself."); *Pfeiffer*, 1993 WL 443403 at *3 (explaining that telephone calls and letters to the plaintiffs informing them *about* contractual activities, in contrast to acts *constituting* performance or breach of the contract, do not ground venue).

Notably, Plaintiff has not shown that the Contract was negotiated here: Gessel provided Plaintiff with the Contract (*see* ECF 26, Amit Patel Decl. ¶ 8), and so there do not appear to have

been any negotiations. Nor does Plaintiff say that he signed the Contract here; he provides no indication where he was when he signed.

The only part of the Contract that was to be performed in New York City was photography at the engagement party several months before the wedding. (*See* ECF 1, Compl. Ex. A.) Yet Plaintiff acknowledges that Defendants performed this portion of the Contract as anticipated. (*See* ECF 27, Anisha Patel Decl. ¶ 6.) Accordingly, the photography at the engagement party was not part of the breach; the location of that party therefore is not relevant to a determination of where venue is proper. *See Jordache,* 1994 WL 74860, at *4 (distinguishing between conduct that did and did not underlie the breach).

Most of the contractual provisions that were breached were to be performed in Turkey, where the wedding took place: that was where Defendants were supposed to take photographs and videos, and the Contract also stated that some of the photos were to be provided to the bride and groom before the parties departed from Turkey. (*See* ECF 1, Compl. Ex. A.) The rest of the photos were to be sent to an online digital gallery (*see id.*), which could be created and accessed from any physical location. (*See id.*) These facts do not indicate that the relevant contractual provisions were to be performed in this District.

Plaintiff provides no support for his allegation that "the events giving rise to Plaintiff's claims, including Defendants' conduct occurred in [this judicial] district," (ECF 1, Compl. ¶ 6). Plaintiff has not indicated where Defendants' breaching conduct took place – he does not indicate where Gessel was when he emailed to say he would not photograph the wedding unless Plaintiff made certain concessions. And as to Plaintiff's injury, to the extent it was

17

monetary, it occurred where Plaintiff resides, *Glob. Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999) ("When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss."), which is in the District of New Jersey (*see* ECF 1, Compl. ¶ 1).

Based on the foregoing, I conclude that venue does not lie in this District under 28 U.S.C. § 1391(b)(2).

2.  Analysis Under 28 U.S.C. § 1391(b)(3)

Even if venue does not lie in this District under section 1391(b)(2), it could lie in this District under section 1391(b)(3), which allows for venue "in any judicial district in which any defendant is subject to the court's personal jurisdiction," if there is no district in which the action may otherwise be brought. While Defendants argue that venue is proper in the Western District of Washington (*see* ECF 25-17, Defs.' Memo. at 6), they do not demonstrate that venue lies there. They submitted an affidavit from Gessel stating that CGS has its principal place of business in Seattle, but while the affidavit stated that Gessel is not domiciled in this District, it was conspicuously silent as to where he makes his home. (*See* ECF 25-16, Gessel Decl.) And in his deposition, Gessel stated that he does not have a residence in Seattle anymore. (*See* ECF 55-1, Gessel Dep. Transcript at 18:23.) The assertion by Defendants' counsel that Defendants "maintain contacts" in the Western District of Washington (*see* ECF 30-2, Reply Affirmation of Kyle M. Mitchell ("Mitchell Reply Aff.") ¶ 9), does not satisfy the requirement for a judicial district "in which any defendant resides if all defendants are residents of the State in which the

district is located." Nor do Defendants make any effort to demonstrate that the venue would be proper in the Western District of Washington based on sections 1391(b)(2) or 1391(b)(3).

Defendants are subject to personal jurisdiction in this District. *See supra* Part I(B). Based on the record before me, there is no other jurisdiction where venue would lie if venue is not proper in this District. Accordingly, I find that venue is proper here under section 1391(b)(3). I therefore recommend that Defendants' motion to dismiss pursuant to Rule 12(b)(3) be denied.

C.   Transfer of Venue

Defendants request in the alternative a transfer of venue to the Western District of Washington, although they do not specify the provision under which they seek transfer. Under 28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." By contrast, 28 U.S.C. § 1404(a) states that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."

Transfer would not be proper under 28 U.S.C. § 1406(a), since that statute provides for a transfer to another district when the action was filed in a district where venue did not lie, and in this matter, venue is proper in this District. I therefore turn to the factors governing whether a transfer is appropriate pursuant to section 1404(a).

Courts typically consider the following non-exhaustive list of factors when evaluating motions under section 1404:

19

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017). To prevail on a motion to transfer under section 1404, Defendants must make a "'clear and convincing' showing" that transfer is warranted. *Bukhari v. Deloitte & Touche LLP*, No. 12-CV-4290 (PAE), 2012 WL 5904815, at *2 (S.D.N.Y. Nov. 26, 2012) (quoting *N.Y. Mar. & Gen. Ins. Co. v. Lafarge N. A., Inc.*, 599 F.3d 102, 113 (2d Cir. 2010)).

Defendants have not identified any witnesses based in the Western District of Washington, while Plaintiff's daughter and her wedding planner are New York-based witnesses for whom proceeding in this District would be more convenient. It would be more convenient for Plaintiff to proceed in New York and for Defendants to proceed in Seattle. Documents and sources of proof similarly would be located in both jurisdictions, as well as elsewhere. There is no one locus of operative facts: relevant loci include Seattle, New York City, New Jersey, and Turkey. Defendants have identified no unwilling witnesses who could not be compelled to come to New York; nor have they provided any information about the relative means of the parties. The law of Washington State governs the dispute (*see* ECF 1, Compl. Ex. A.), which counsels in favor of transfer, but Plaintiff's choice of forum counsels in favor of the matter remaining in this District. Because, as set out below, *see infra* Part III(C), I believe that there is a valid and binding arbitration clause in the parties' contract, the final factor is neutral. Under these circumstances,

Defendants have not made a clear and convincing showing that the case should be transferred pursuant to section 1404(a) to the Western District of Washington.

I therefore recommend that the request to transfer venue to the Western District of Washington pursuant to section 1404(a) be denied.

### III.    Motion To Dismiss in Favor of Arbitration/Motion To Compel Arbitration

#### A.    Treating the Defendants' Motion as One To Compel Arbitration

The Second Circuit has recognized that, under certain circumstances, "a motion to dismiss based on an arbitration clause may be treated as a motion to compel arbitration[.]" *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 405 n.1 (S.D.N.Y. 2016) (citing *Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 139-140 (2d Cir. 2008)). The motion must either "explicitly or implicitly ask[] the court to order arbitration." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). Where such a request is made, the movant demonstrates "an intent . . . to compel arbitration," and the Court may treat a "motion[ ] to dismiss based on [a] mandatory arbitration clause[ ] as [a] motion[ ] to compel arbitration." *Id.* at 230 & n.3; *see also Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 390 (S.D.N.Y. 2021). Here, although Defendants have not made a formal motion to compel arbitration, they explicitly request an order compelling arbitration (ECF 25-17, Defs.' Mem. at 7). I therefore recommend denying the motion to dismiss in favor of arbitration and turn to the request to compel arbitration.

#### B.    Legal Standard for Deciding a Motion To Compel Arbitration

The Federal Arbitration Act ("FAA") governs any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. It "was designed to promote arbitration," and it reflects "[a]

21

national policy favoring arbitration." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

An arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In evaluating the validity of an arbitration agreement, courts look at whether the arbitration agreement is binding on the parties, and whether the dispute between the parties falls within the scope of the agreement. *See Wilson v. Mercury Cas. Co.*, No. 18-CV-11014 (AT) (OTW), 2019 WL 13020790, at *2 (S.D.N.Y. Apr. 30, 2019). Even "[t]he lack of specific terms governing the arbitration's procedure does not invalidate the agreement, considering that the FAA provides an objective method to fill gaps in arbitration agreements." *Wework Companies Inc. v. Zoumer*, No. 16-CV-00457 (PKC), 2016 WL 1337280, at *5 (S.D.N.Y. Apr. 5, 2016) (citing 9 U.S.C. § 5). The FAA provides that if no method is provided in the agreement for how the arbitrator should be selected, "upon the application of either party to the controversy the court shall designate and appoint an arbitrator . . . who shall act under the said agreement with the same force and effect as if he . . . had been specifically named therein . . . ." 9 U.S.C. § 5.

In any court case that involves an issue that is subject to arbitration the court, "upon being satisfied that the issue . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." *Id.* § 3.

When deciding a motion to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). Courts consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and draw all reasonable inferences in favor of the non-moving party. *Id.* (internal quotation marks and citation omitted).

A court may compel arbitration only within the jurisdiction where the court is located.  *See, e.g.*, *Sea Spray Holdings, Ltd. V. Pali Fin. Grp., Inc.*, 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003) (noting that "a federal court lacks authority pursuant to 9 U.S.C. § 4 to compel arbitration outside its district") (quoting *DaPuzzo v. Globalvest Mgmnt. Co., L.P.*, 263 F. Supp. 2d 714, 739 (S.D.N.Y. 2003) (internal quotation marks omitted).

C.    Analysis

The arbitration clause states in its entirety: "In the unlikely event of a disagreement of this document, only arbitration may be used." (ECF 1, Compl. Ex. A.)

Plaintiff takes the position that the arbitration clause is unenforceable because it is ambiguous. (*See* ECF 29, Pl.'s Opp. at 9-12.) He argues that the use of the term "document," as opposed to "the parties' agreement," demonstrates that arbitration was contemplated "for the sole purpose of resolving any dispute associated with the authenticity of the document, rather than any substantive dispute involving the scope of work contemplated under the Service Agreement." (*Id*. at 9.)

23

Under Washington law, which governs the Contract, the interpretation of a contract is a question of law for the Court, *see Berg v. Hudesman*, 115 Wash.2d 657, 668, (1990), and courts "generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash.2d 493, 504 (2005).

While the arbitration clause is ungrammatical, I believe that it is nevertheless unambiguous. Given its ordinary meaning, the term "this document" seems clearly to be synonymous with "the parties' agreement." It follows that the phrase "a disagreement of this document" means any disagreement about the parties' agreement, including whether Defendants breached that agreement. There is no other plausible interpretation of the term document, and the entirety of the agreement does not clearly demonstrate a contrary intent.

Plaintiff has no basis for his insistence on inserting between "a disagreement" and "of this document" the words "about the authenticity." His position finds no support in the plain language of the document, which has no need for additional language to make sense. It also seems highly improbable that the parties would have agreed to arbitrate the authenticity of the Contract but not the substance of its terms.

Plaintiff goes on to argue that the phrase "only arbitration may be used" does not indicate the purpose for which arbitration may be used. (ECF 26, Amit Patel Decl. ¶ 12.) It is clear from the plain language of the clause that the purpose for which arbitration is to be used is to resolve "a disagreement of this document."

Plaintiff also maintains that the phrase "only arbitration may be used" fails to indicate whether the arbitration is intended to be binding or non-binding. (ECF 29, Pl.'s Opp. at 9-10.) I disagree. The statement that "only" arbitration may be used to resolve disputes between the parties indicates that the arbitration was meant to be binding, since the agreement provides for no other means of dispute resolution.

Plaintiff complains that Defendants fail to provide any extrinsic evidence refuting his interpretation (*id.* at 9), but such evidence would be necessary and appropriate only if the plain language of the contract is ambiguous. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wash.2d 654, 666 (2000) ("If the clause is ambiguous, . . . extrinsic evidence of the intent of the parties may be relied upon to resolve the ambiguity."). Here, the contract language is not ambiguous, and so the Court may not examine extrinsic evidence about the parties' subjective interpretations. Plaintiff similarly argues that the supposedly ambiguous contractual language should be construed against the drafters, which in this case were Defendants (*see* ECF 29, Pl.'s Opp. at 9). However, that argument is not relevant where, as here, the contractual language is unambiguous. *See Weyerhaeuser,* 142 Wash.2d at 666 (explaining that only if an ambiguity in contract language cannot be resolved with extrinsic evidence will the court interpret the provision against the drafter).

Having concluded that the arbitration clause is unambiguous and therefore enforceable, I recommend that Defendants' motion to compel arbitration be granted, with such arbitration to take place within this District.

### 2. Motion To Dismiss Pursuant to Rule 12(b)(6)

Because I recommend that Plaintiff's request to compel arbitration be granted, I do not address Defendants' arguments in support of their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. I recommend that this motion be denied without prejudice to Defendants' right to renew it before the arbitrator.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that the motion to dismiss for lack of service of process be DENIED as moot; that the motion to dismiss for lack of personal jurisdiction be DENIED; that the motion to dismiss for improper venue be DENIED; that the motion to transfer venue be DENIED; that the motion to dismiss in favor of arbitration be DENIED; and that the motion to compel arbitration be GRANTED, with such arbitration to take place within this District. I further respectfully recommend that the motion to dismiss pursuant to Rule 12(b)(6) be DENIED without prejudice to Defendants' renewing that motion before the arbitrator. The parties may either agree to an arbitrator or, if they cannot do so, one or both of them may make an application to the Court to choose an arbitrator for them and, thereafter, an application to stay this case pending conclusion of the arbitration.

Dated:      New York, New York
            April 17, 2024

SO ORDERED

_____
ROBYN F. TARNOFSKY
UNITED STATES MAGISTRATE JUDGE

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. §

636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this Report and recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Requests for extensions of time for filing objections must be addressed to Judge Woods.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

27